**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Crim. no. 1:11-cr-00424-JG-4 |
| | * | |
| Plaintiff, | * | Hon. John Gleeson |
| | * | |
| v. | * | |
| | * | |
| JAMES ROSEMOND, | * | |
| | * | |
| Defendant. | * | |

**ADDENDUM TO MOTION FOR A NEW TRIAL**

COMES NOW the Defendant herein, JAMES ROSEMOND, by and through his

undersigned counsel, and respectfully moves for a new trial.  The Defendant's request is made

pursuant to Rule 33 of the Federal Rules of Civil Procedure.  The Defendant submits that the

interests of justice require that the motion be granted.  See United States v Smith, 331 U.S. 469,

91 L. Ed. 1610, 67 S. Ct. 1330 (1947).  The Defendant recognizes that motions for new trial

pursuant to Rule 33 are directed to the trial court's discretion, and that such are sparingly

granted.  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).  However, Rule 33 does

mandate the broadest possible inquiry into the nature of challenged proceedings.  Id.  On a

motion for new trial, the court must review the challenged trial proceedings to ensure that the

dictates of due process have been met.  Id.  In support of his motion, the Defendant puts forth the

following additional claims:

1

**X.**     When the defendant's defense attorney provided the eight (8) names to the prosecution, that act was the act of an agent of the prosecutuion for what he did, by doing that was tot eliminating the question of reasonable doubt and, thereby, cause the conviction of the defendant. The removal of the reasonable doubt requirement by Shargel requires granting the defendant a new trial. U.S. v. Swanson, 943 F2d 1070 (9th Cir. 1991).

**XI.**     Prior to the commencement of the trial, the defense attorney was made aware of telephone calls made by Tony Martin to the defendant's son during which telephone conversations Tony Martin made certain statements that could have impeached. The defendant's son recorded these conversations and provided a copy if that recording to Shargel. Shargel failed to confront Tony Martin with that contained in the recording. See: Affidavit of James Rosemond Jr.

**XII.**     Mark Samedi provided exculpatory information to Shargel. Shargel apparently ignored this exculpatory information and failed to call Samedi as a defense witness. See: affidavit of Mark Samedi.

**XIII**.     Shargel failed to permit the defendant to testify and ignored the defendant's demands. All of this was ineffective assistance. See: Affidavit of James Rosemond.

2

## CONCLUSION

For the foregoing  reasons, as well as the argument put forth in the attached

memorandum, the Defendant asks this court to grant his motion for a new trial.

Respectfully submitted,

by:        _/s/_____

David A. Bythewood, Esq. (DB-2814)
Attorney for the Defendant
85 Willis Avenue, Suite J
Mineola, New York 11501
(516) 741-0066
Dabytheesq@aol.com

3

## CERTIFICATE OF SERVICE


I certify that on the date reported below I electronically filed the foregoing motion and attached memorandum with the United States District Court for the Eastern District of New York by using the CM/ECF system. I certify that the following attorney for the opposing party, the United States, is registered an ECF Filer and will be served by the CM/ECF system: Carolyn Pokorney, carolyn.pokorny@usdoj.gov; Todd Kaminsky, todd.kaminsky@usdoj.gov; Una A. Dean, una.dean@usdoj.gov; Lan Hguyen, lan.nguyen@usdoj.gov; and Soumya Dayananda, soumya.dayananda@usdoj.gov.


/s/
_____
David A. Bythewood, Esq. (DB-2814)
Attorney for the Defendant
85 Willis Avenue, Suite J
`    Mineola, New York 11501
(516) 741-0066
Dabytheesq@aol.com

## STATEMENT OF FACTS WITH ADDITIONAL FACTS

### ADDITIONAL FACTS

Prior to the trial Shargel was provided with a recording made by James Rosemond Jr. In which recording, Tony Martin, a prosecution witness, told James Rosemond Jr. That he apologized for what he was doing but that he had to do it in order to get the plea deal he wanted and further told him that what he was telling the prosecutors, to get the deal, was fabricated. James Rosemond, Jr. recorded the Tony Martin telephone calls and provided a copy of the recorded conversations to Shargel. Shargel did nothing with it and failed to confront Tony Martin with that from the recordings that could have impeached Tony Martin. This could have cause a different outcome at trial.  See: Affidavit of James Rosemond, Jr.

Shargel failed to adequately investigate the case.  Mark Samedi was never adequately interviewed by Shargel and Mark Samedi was willing to give exculpatory testimony. See: Affidavit of Mark Samedi.

Shargel failed to follow the directioon of the defendant which is set forth in the affidavit of the defendant. See: Affidavit of James Rosemond.

### ORIGINAL FACTS

The attorney for the defendant, Shargel, in the above referenced matter, without the protection afforded by a Proffer Agreement, provided the prosecution with the names of seven individuals (Trial transcript pps. 2285 et seq.) who, by the representation of Shargel to the prosecution were individuals who purportedly sold cocaine to the defendant who was charged

5

with being the leader of a criminal drug enterprise. The providing by Shargel of those eight (8)

names and other of his acts gave to the prosecution the evidence they needed to convict the

defendant and was among the acts of Shargel that caused the defendant to suffer from the

ineffective assistance of his counsel. Each of those acts will be laid out below and addressed in

these motion papers.

After Shargel had provided the eight (8) names to the prosecution, under his

representation and direction, defendant James Rosemond participated in eight (8) proffer

sessions (Trial transcript pps. 2285 and 2286) each of which proffer sessions was governed by

the protections provided by the language of a written Proffer Agreement. An example of such

Proffer Agreement is annexed hereto and made a part hereof as Exhibit A. Each said Proffer

Agreement guaranteed confidentiality to the defendant and therein referred to the defendant as

"Client". In the body of each said Proffer Agreement there was clear and specific protective

language that induced James Rosemond - here detrimentally - to make certain disclosures to the

prosecution which language stated: "In any prosecution brought against Client by the Office,

except a prosecution for false statements, obstruction of justice or perjury with respect to acts

committed or statements made at or after the meeting, the Office will not offer in evidence any

statement made by Client at the meeting (A) in its case in chief or (B) at sentencing." See:

Exhibit A. It is noted here that each Proffer Agreement was an arms length contract that was

never breached by defendant James Rosemond.

At the trial of defendant James Rosemond, Shargel made certain statements in his

Opening Statement - which Opening Statement has the purpose of telling the jury what the

evidence will show - that allowed the prosecution to successfully argue that due to Shargel's

statements the confidentiality contractually guaranteed to defendant James Rosemond had been lost and, consequently, the prosecution could and would use those disclosures made by defendant James Rosemond at the proffer sessions in its case in chief against him. (Trial transcript p. 56 and 188). Shargel, on the record, sated that he had intentionally committed his acts that allowed the prosecution to use the protected disclosures by defendant James Rosemond against him. (Trial transcript pps. 60, 61 and 182). The prosecution used this damning evidence and made specific reference to it as the admissions of defendant James Rosemond that was all that was needed to convict him. (Trial transcript pps. 2285 et seq.) When elicited from federal agents and offered into evidence Shargel never objected. Id. And, as a consequence, James Rosemond was convicted.

Prior to the prosecution using the disclosures of defendant James Rosemond against him in its case in chief, which disclosures he had provided pursuant to Proffer Agreements, the prosecution sent a letter to Judge Gleeson, dated April 9, 2012, in which Judge Gleeson was advised of certain proffer protected disclosures that the prosecution intended to use at trial. Thereafter Shargel, who had attended those proffer sessions, responded with his own letter dated April 11, 2012, to Judge Gleeson. In that letter he challenged what the prosecution represented as that which had been disclosed at the proffer sessions by defendant James Rosemond and referenced his associate, Ross Kramer, as having a different recollection of the content of the disclosures and that he intended to call Kramer as a witness at trial. A copy of that Shargel letter is attached hereto as Exhibit B. The issues raised by Shargel in that letter were serious as the letter was asserting that the prosecution was planning use contrived evidence against defendant James Rosemond. Clearly Shargel had attended all of the proffer sessions and had placed his

signature of the Proffer Agreements as the attorney for James Rosemond. In light of the letter

from Shargel in which Shargel disputed the accuracy of what the government claimed was

purportedly said by defendant James Rosemond during his proffer sessions, Judge Gleeson

ordered a Curcio hearing which was convened on April 12, 2012. (Cover page of transcript of

Curcio hearing). During the Curcio hearing it was established that Shargel's associate, Kramer,

did not attend all of the proffer sessions.  (Transcript of Curcio hearing, p. 3.). Shargel, during

the Curcio hearing advised the court that he would decide prior to the trial whether or not he

would call Kramer as a witness. (Transcript of Curcio hearing p. 4) There was no mention of

Shargel being called a s a witness. Shargel went on to tell the court that it would be decided

whether or not Kramer would be called as a witness by May 5, 2012.  (Transcript of Curcio

hearing p. 5). The court advised Shargel that he would have to decide whether or not Kramer

was to be called as a witness prior to the start of the trial. (Transcript of Curcio hearing p. 6).

Shargel, during that hearing noted that a protective order that precluded any dissemination of the

proffer material but between the attorneys. (Transcript of Curcio hearing p. 9). The prosecution

then raised the issue of Shargel's recollection of the disclosures made by defendant James

Rosemond during the proffer sessions. (Transcript of Curcio hearing p. 14). The court

recognized this as a good point and noted that Shargel's recollection might differ from that of

Kramer. Id.  Shargel said that his recollection was no different than Kramer's. (Transcript of

Curcio hearing p. 15)  But, while Shargel attended all of the proffer sessions, Kramer did not

attend them all. (Transcript of Curcio hearing p. 3). Apparently with this in mind the court said

to Shargel: "... if Kramer and the agent remembered a critical fact in one way that's unfavorable

to your client and you remembered it in another way that's favorable to your client, there could

8

be a problem at trial. He might need you as a witness instead of Ross Kramer and you would be

unavailable. (Transcript of Curcio hearing p. 15, lines 12-17). No waiver was secured from

defendant James Rosemond during the Curcio Hearing. (Transcript of Curcio hearing).

Shargel never called Ross Kramer as a witness and since he had, without question,

attended all of the proffer sessions was, at that time, a witness who was needed to testify for on

behalf of the defendant and should have removed himself as the attorney for James Rosemond.

He failed to do so notwithstanding his advocate/witness status. Thereafter, Shargel was in

conflict and in violation of the disciplinary rules for New York State attorneys. In addition, this

caused there to be a conflict of interest mandating Shargel removing himself as counsel for

defendant James Rosemond.

At the commencement of the trial, in the jury selection phase, juror number 12 made

improper contact with the prosecution notwithstanding the court's admonition against said

contact. In fact, it was reported that juror number 12, at around the same time if that contact,

made a hand gesture to the prosecution of thumbs up. Juror number 12's acts were seen and

reported and when she was questioned her answers were evasive. She could not recall the

substance of what she said, perhaps conveniently, due to an apparent desire to be a prejudiced

juror. This is supported by the fact that the juror made contact with the prosecution directly and

not with a more appropriate person such as a court reporter or the judge. That this juror elected

to make contact with the prosecution causes a presumption that she was biased in favor of the

prosecution. It was an error for the court to not immediately remove that juror. There was no

way of telling what this juror said or did while serving and how much damage it caused to

defendant James Rosemond.

During the trial, without laying any foundation whatsoever and without any objection from Shargel, the prosecution introduced testimony from a California policeman named Smith (Trial transcript pps. 970 et seq.). Smith testified to being called to the scene by another California policeman who had stopped the brother of defendant James Rosemond. His elicited testimony that followed was of the drug detection dog showing a reactions that was believed by those California policemen to be a reaction to drugs. But, no drugs were found. Instead, when they searched that automobile they found, in the trunk, what Smith described as a duffel bag that contained over $800,000.00 in cash and a secret compartment. At no time was there any nexus that connected this automobile, the more than $800,000.00 or the secret compartment to defendant James Rosemond. In all the testimony elicited had no probative value whatsoever but was extremely prejudicial and damaging to the defendant.

Following the trial, when interviewed by a writer, one of the jurors who sat as a juror at the trial of James Rosemond disclosed to that writer that the jurors violated the court's direction and utilized unreliable information from sources other than the evidence presented at trial as the basis for their verdict of guilty.

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR A NEW TRIAL

As a matter of introduction, the Defendant respectfully submits that the events which transpired in the instant case constitute a denial of the Petitioner's rights to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution, to a fair trial as guaranteed by the Sixth Amendment to the United States Constitution, and to due process of law as guaranteed by the Fifth Amendment to the United States Constitution.  These errors were

not merely procedural, but substantially infringed upon the Petitioner's constitutional rights.

## LAW AND ARGUMENT

**X.      The Defense Attorney Eliminated the Need for the Prosecution to Prove its Case Beyond a Reasonable Doubt by Eliminating the Need for Reasonable Doubt.**

The defense attorney, Gerald Shargel, when he gave the eight names to the prosecution that he represented were those who supplied drugs to the defendant, permitting the prosecution to use the defendant's confidential proffer statements and other acts during trial was a concession by the defense attorney that there was no reasonable doubt concerning the issues in dispute and thereby relieved the prosecution of its burden of proof. Such action requires granting the defendant a new trial. United States v. Swanson, 943 F.2d 1072 [9th Cir. 1991].

**XI.     The Defense Attorney was Ineffective When He failed to Use the Information Provided By the Defendant's Son to Impeach Tony Martin**

When given the CD with the Tony Martin admissions the defense attorney was obligated to use that content to impeach Tony Martin. Frazer v. United States, 18 F.3d 778, 785 [9th Cir. 1994] and United States Ex. Rel Partee v. Lane, 926 F.2d 694, 702 [7th Cir. 1991].

**XII.    The Defense Attorney was Ineffective When He failed to Use Mark Samedi as a Witness**

By not securing Mark Samedi as a witness, Shargel was ineffective. Frazer v. United States, 18 F.3d 778, 785 [9th Cir. 1994] and United States Ex. Rel Partee v. Lane, 926 F.2d 694, 702 [7th Cir. 1991].

**XIII.   Defense Attorney was Ineffective When He failed to Follow What the Defendant Wanted**

The failure of Shargel, as laid out in the affidavit of the defendant caused ineffective

assistance.  <u>Frazer v. United States</u>, 18 F.3d 778, 785 [9th Cir. 1994] and <u>United States Ex. Rel</u>

<u>Partee v. Lane</u>, 926 F.2d 694, 702 [7th Cir. 1991].

.

## CONCLUSION

For the above stated reasons, the Defendant prays that his Motion for a New Trial is

granted.


September 6, 2013


Respectfully submitted,

/s/
_____
David A. Bythewood, Esq. (DB-2814)
Attorney for the Defendant
85 Willis Avenue, Suite J
Mineola, New York 11501
(516) 741-0066
Dabytheesq@aol.com