Exhibit A

PROFFER.wpd
3/2010

<u>PROFFER AGREEMENT</u>

        With respect to the meeting of James Rosemomd ("Client")
and his attorney, Gerald Shargel Esq., with Todd Kaminsky of the
United States Attorney's Office, and Ed Tracy of the DEA held at
the offices of the United States Attorney for the Eastern District
of New York ("the Office") on October 11, 2011 (the "Meeting"), the
following understandings exist:

        1.    **THIS IS NOT A COOPERATION AGREEMENT.**  Client agrees
to provide the Office with information, and to respond to
questions, so that the Office may evaluate Client's information and
responses in making prosecutorial decisions.  By receiving Client's
proffer, the Office does not agree to confer immunity, make a
motion on Client's behalf, or enter into a cooperation agreement,
plea agreement or non-prosecution agreement.  The Office makes no
representation about the likelihood that any such agreement will be
reached in connection with this proffer.

        2.    In any prosecution brought against Client by the
Office, except a prosecution for false statements, obstruction of
justice, or perjury with respect to acts committed or statements
made at or after the Meeting, the Office will not offer in evidence
any statements made by Client at the Meeting (A) in its case-in-
chief or (B) at sentencing.  The Office will, to the extent it
believes it is required by law, notify the Probation Department and
the Court in connection with sentencing of any statements made by
Client at the Meeting.  If such notification is made, the Office
also will notify the Probation Department and the Court of the
Office's agreement not to offer in evidence any such statements at
sentencing.

        3.    Notwithstanding paragraph (2) above, the Office may
use any statements made by Client: (A) to obtain leads to other
evidence, which evidence may be used by the Office in any stage of
a criminal prosecution (including but not limited to detention
hearing, trial or sentencing), civil or administrative proceeding,
(B) as substantive evidence to cross-examine Client, should Client
testify, and (C) as substantive evidence to rebut, directly or
indirectly, any evidence offered or elicited, or factual assertions
made, by or on behalf of Client at any stage of a criminal
prosecution (including but not limited to detention hearing, trial
or sentencing).

        4.    Notwithstanding any of the foregoing, in the event
the Client seeks to qualify for a reduction in sentence under 18

2

U.S.C. § 3553(f) or Sentencing Guideline §§ 2D1.1(b)(11) or 5C1.2, paragraphs (2) and (3) will not apply at sentencing to any statements made by Client at the Meeting, and the Court may rely on all statements by Client in sentencing the Client.

5.    It is further understood that this agreement is limited to the statements made by Client at the Meeting and does not apply to any oral, written or recorded statements made by Client at any other time or to any other information provided at the Meeting.  Moreover, the provisions of Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 do not apply to any statements made by Client at the Meeting, and Client shall not assert any claim under these or any other provisions of law that such statements or any leads therefrom should be suppressed.

6.    No understandings, promises, or agreements have been entered into with respect to the Meeting other than those set forth in this agreement, and none will be entered into unless memorialized in writing and signed by all parties.

Dated:    Brooklyn, New York
          October 11, 2011

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

                   By: _____
                       Todd Kaminsky
                       Assistant U.S. Attorney

                       _____
                       Agent

I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

_____
Client

_____
Attorney for Client

Exhibit B

# GERALD L. SHARGEL

GERALD L. SHARGEL                        LAW OFFICES                    1790 BROADWAY, SUITE 1501
ROSS M. KRAMER                                                          NEW YORK, NEW YORK 10019
EVAN L. LIPTON                                                          TEL: 212.446.2323
                                                                        FAX: 212.446.2330
                                                                        info@shargellaw.com

## REQUEST TO BE FILED UNDER SEAL

April 11, 2012

By Hand Delivery
Hon. John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    United States v. Rosemond, 11 Cr. 424 (JG)

Dear Judge Gleeson:

I write on behalf of James Rosemond to respond to the government's letter dated April 9, 2012. The government's letter contains statements that it proposes to introduce at trial should the defense "trigger a waiver of the protection afforded to [Rosemond's] proffer protected statements." (Gov't Letter at 2.) Unfortunately, the recollection of my associate, Ross Kramer, differs on several points from the statements in the government's letter.[1]

The disputed statements include the following:

(1) "[I]n total, the Rosemond Enterprise shipped and sold in the range of 480-600 kilograms of cocaine each year between 2007 and 2010." (Gov't Ltr. at 2.)

(2) Rosemond "considered himself the 'CEO' of the organization." (Gov't Ltr. at 2.)

(3) "Rosemond also kept some cocaine at a stash house in Queens." (Gov't Ltr. at 4.)

(4) "Rosemond once asked Winston Harris to purchase a gun for him, which Harris did. Rosemond said Khalil Abdullah took possession of the gun." (Gov't Ltr. at 4.)

---

[1]    I believe that Mr. Kramer attended all but one of the proffer sessions that the government conducted with Rosemond.

GERALD L. SHARGEL

Hon. John Gleeson
United States District Judge
Page 2

(5) "In 2009, Rosemond arranged to have Lowell Fletcher murdered for his son's assault in 2007." (Gov't Ltr. at 6.)[2]

(6) "Rosemond 'might have' provided the .22 caliber gun that was used to kill Fletcher." (Gov't Ltr. at 7.)

If necessary, Mr. Kramer is prepared to testify at trial as to his recollection.

Respectfully submitted,

Gerald Shargel

cc:   Assistant United States Attorneys Soumya Dayananda, Una Dean and Lan Nguyen (via email)

---

[2]     I respectfully submit that the issue of the Lowell Fletcher murder should not be admitted at this trial. The related discrepancies are addressed herein only for the purpose of completeness.

Exhibit C

TRULINCS  17903054 - ROSEMOND, JAMES J - Unit: NYM-G-N

-----------------------------------------------------------------------------------------------------------

FROM: 17903054
TO: Harrons, Tee; Kramer, Ross; Shargel, Gerry
SUBJECT: attorney client privilege
DATE: 05/30/2012 08:25:56 PM


Jerry,
Because we have to make quick decisions as our defense have to be ready ik just want to reiterate that i do not want to hold back on witnesses that we need to prove our point. I definitely need Ross Kramer, i would not have gone with this defense if we never was going to use him. I need Mark Samuel as he can explain all deals he's done for me including the real estate and corporate deals. Motisula Zulu from Doug Davis office who can do what you needed Doug to testify to. And lastly, Arty Erk, to explain the conditions of the accounts when John turned them over to him. Evans told me that Arty was being difficult on the POA but he said to Tamika that he is will and ready to help if he can just have a conversation with you. But these people are crucial. Dont want to half step after the gov. put on 25 worthless witnesses lets put ours on and win this case. thanks for understanding.

Exhibit D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA

                                    AFFIDAVIT

       -v-

                                      11-Cr-424 (JG)

JAMES ROSEMOND,
                      Defendant.
--------------------------------------------------------x

State of New York, County of _____ SS.:

    I, Jarrod Whittaker, being duly sworn, depose and say:

    1. I am a recent graduate of Columbia University who had an occasion to meet the defendant ten (10) years ago.

    2. Because if the defendant's status in the entertainment industry, I decided that I wanted to write an article about his trial.

    3. I had attended the trial on a few occasions and made my own notes.

    4. By utilizing Google and the white pages on my computer, I was able to locate and interview one of the jurors who has the name Austin Olatunji.

    5. During the interview I was shocked when Mr. Olatunji told me that during deliberations two (2) of the female jurors made it very clear that they opined that James Rosemond was guilty due to his involvement in the Tupac thing.

***Page 1 of two pages***
    6. I believed that this was important so I made it known to several people.

      7. As a consequence of my making what Mr. Olatunji said known, I was asked to and

have made this affidavit which is true and is what I would testify to if called to testify in any

legal setting.

Dated: July 3rd, 2013

_____

Jarrod Whittaker

*Appeared Before me on 3rd July 2013*

*Jarrod Whitaker*

*Id presental (NYSDL valid)*

*BF: 01-03-2016*

TAMMI TERRELL MCCULLOUGH
Notary Public, State of New York
No. 01MC6195180
Qualified in Kings County
Commission Expires October 20, 2016

Exhibit E

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK
### BROOKLYN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Crim. no. 1:11-cr-00424-JG-4 |
| | * | |
| Plaintiff, | * | Hon. John Gleeson |
| | * | |
| -v- | * | |
| | * | AFFIDAVIT OF |
| JAMES ROSEMOND, | * | TAMIKA WOOLEY |
| | * | |
| Defendant. | * | |

State of New York, County of _Kings_ ...SS..:

Tamika Wooley, being duly sworn, deposes and says:

1. I am fully aware of the penalties for perjury when giving this sworn affidavit of facts concerning the conversation I heard that occurred between two (2) female jurors immediately following the jury finding James Rosemond guilty.

2. I attended the trial of James Rosemond and advise that I am his fiancé so that there is no question of who I am. I do not know if this is known to you or the government but and disclosing it because I have no desire to try to hide anything. Notwithstanding that status, I was not aware of the importance of that which is in this, my affidavit, until discussions with the new attorney for James Rosemond, David A. Bythewood, Esq., who, when he heard this information, asked me for this affidavit.

3. Following the trial of James Rosemond, I left the courthouse and was very depressed due to his conviction. So, after leaving the courthouse, I took a seat on a bench at Camden Plaza Park which I recall being to the left of the courthouse.

4. When sitting on that bench, two (2) of the women who had been on the jury walked past me. I recognized them and was saddened by what they said but, at that time, did not

recognize that what they said had any significance or importance. I now know differently.

5. The two (2) women who had been jurors I recognized as the foreman of the jury who had short hear and appeared to be in her fifties and juror number 5 who had long brown hair with highlights and a larger frame. Their conversation referred to a male juror and that he was foolish for not seeing the guilt of James Rosemond as they saw it as well as how much faster they could have been done but for him. They voiced their frustration at how long he made the deliberations go and how they had to get James Rosemond's guilt into his thick head.

Dated: July 8, 2013

_____
Tamika Wooley

Sworn hereto before me this 9th day of July, 2013

_____
Notary Public

SHARON A TOUSSAINT
Notary Public, State of New York
No. 02TO6269632
Qualified in Kings County
Commission Expires Oct. 1, 20 16

Exhibit F

TRULINCS  17903054 - ROSEMOND, JAMES J - Unit: NYM-G-N

---------------------------------------------------------------------------------------------------------

FROM: 17903054
TO: Shargel, Gerry
SUBJECT: attorney client privilege
DATE: 05/28/2012 11:59:53 AM

Jerry,
had alot of time to think about a few things.
want to discuss Chuck again.
also pls have a conversation with Arty Erk, he may be good to counter John and tell you what state my accounts were in when
he took over, plus he was business manager for other big artist and could explain two things: it is regular practice about after
parties to collect cash and it isnt regular practice for an accountant to tell his client not to give him cash and to structure.
and lastly, every one of my family & spectators feel were not thoroughly crossing the witnesses. pls the rest of these witnesses
are very crucial, we need to really expose the lies.
will discuss more tomorrow. have a good one
-----Shargel, Gerry on 5/28/2012 10:15 AM wrote:

>

I saw it; more than once. I know what you mean.

JAMES J ROSEMOND on 5/26/2012 11:49:35 AM wrote
you get a moment watch the movie Usual Suspect

Exhibit G

```
-----------------------------------------------------------X
```

In the matter of JAMES ROSEMOND

**AFFIDAVIT**

```
-----------------------------------------------------------X
```

STATE OF         ) *New Jersey*

                  )ss:

COUNTY OF      ) *Essex*

I, JEFFREY M. CHRISTIE, being duly sworn and deposed, say:

1. I reside at 413 Centre Street, South Orange, NJ 07079.

2. I am the President and Chief Executive Officer at Urban Management, with offices located at 413 Centre Street, South Orange, NJ 07079. As a Tour Manager for various entertainment artists, I am responsible for taking care of the artist while on tour and coordinating all aspects of an event from beginning to end. I am responsible for ensuring that all event payments are received and distributed.

3. Because of the nature of the industry, cash is primarily used rather than checks. It is customary after an event to collect $10,000 or more to pay various expenditures as well as the artist and his/her entourage.

4. I have worked with James Rosemond on numerous occasions and we dealt only with cash.

5. I was contacted by the Law Offices of Gerald Shargel prior to the trial of Mr. Rosemond.

6. I conveyed the nature of my professional relationship with Mr. Rosemond, including the fact that it is an industry custom to primarily use cash when dealing with tour events.

7. I informed Mr. Shargel that I was available to testify on behalf of Mr. Rosemond regarding the nature of our business relationship.

8.  I was never called by Mr. Shargel or anyone from his office, prior to trial, to prepare me to testify.  Nor was I called to testify, by Mr. Shargel.


JEFF CHRISTIE

Sworn to before me this
_____ day of May, 2013

NOTARY PUBLIC

PAULA RANFORD
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES FEB. 28, 2014

<u>AFFIDAVIT OF MARK SAMEDI</u>

I declare under the penalty of perjury that the foregoing is true and correct:

1. My name is Mark Samedi. I am over the age of 18 and reside at Federal Prison Camp, P.O. BOX 4000, Manchester, KY, 40962.

2. I submit this affidavit is in support of James Rosemond. I am stating that on August 25, 2009, the day of my arrest, James Rosemond had nothing to do with my case or my arrest, based on my personal knowledge.

3. If I was ever called upon to testify during trial, I would have testified to these facts, but I was never called upon.

Further Affiant sayeth not.

*Laurel County*                                    *Mark Samedi*

Subscribed and sworn to before me on this  14  day of May, 2013.

*Miranda Farris*                    *My commission expires June 22, 2013*

## AFFIDAVIT OF MARK SAMEDI

I declare under the penalty of perjury that the foregoing is true and correct:

1. My name is Mark Samedi. I am over the age of 18 and reside at Federal Prison Camp, P.O. BOX 4000, Manchester, KY, 40962.

2. I submit this affidavit is in support of James Rosemond. I am stating that on August 25, 2009, the day of my arrest, James Rosemond had nothing to do with my case or my arrest, based on my personal knowledge.

3. If I was ever called upon to testify during trial, I would have testified to these facts, but I was never called upon.

Further Affiant sayeth not.

Subscribed and sworn to before me on this 14 day of May, 2013.

My commission expires June 22, 2013